IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLYMPUS CORPORATION and<br>OLYMPUS AMERICA INC., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | C.A. No. 18-216 (MN) |
| MAXELL, LTD., | )<br>)<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

John W. Shaw, Karen E. Keller, Nathan R. Hoeschen, SHAW KELLER LLP, Wilmington, DE; William J. McCabe, Matthew J. Moffa, Thomas V. Matthew, PERKINS COIE LLP, New York, NY; Kyle R. Canavera, PERKINS COIE LLP, San Diego, CA – Attorneys for Plaintiffs Olympus Corporation and Olympus America Inc.

Timothy Devlin, James Gorman, DEVLIN LAW FIRM LLC, Wilmington, DE; Jamie B. Beaber, Kfir B. Levy, James A. Fussell, III, Tiffany A. Miller, Baldine B. Paul, Alison T. Gelsleichter, MAYER BROWN LLP, Washington, DC; Robert G. Pluta, MAYER BROWN LLP, Chicago, IL – Attorneys for Defendant Maxell, Ltd.

November 14, 2018
Wilmington, Delaware

*/s/ Maryellen Noreika*
**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Plaintiffs Olympus Corporation and Olympus America Inc. ("Plaintiffs") for judgment on the pleadings (D.I. 18) that the claims of U.S. Patent No. 8,478,102 ("the '102 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. For the reasons set forth below, the Court DENIES Plaintiffs' motion.

## I. BACKGROUND

On February 6, 2018, Plaintiffs filed the present action against Defendant Maxell, Ltd. ("Defendant" or "Maxell"), seeking a declaratory judgment that certain of Plaintiffs' products do not infringe various patents owned by Maxell – *i.e.*, U.S. Patent Nos. 6,765,616 ("the '616 Patent"), 7,199,821 ("the '821 Patent"), 7,551,209 ("the '209 Patent"), 8,130,284 ("the '284 Patent") and 9,451,229 ("the '229 Patent") (collectively, "the Maxell Patents"). (D.I. 1 ¶ 1). On April 27, 2018, Defendant answered the complaint, agreeing that there is "an actual, substantial, continuing and justiciable controversy" as to whether Plaintiffs infringe four of the Maxell Patents (D.I. 10 at 5-9), and Defendant asserted counterclaims of infringement for the '616, '821, '209 and '284 Patents (D.I. 10 at 11-25). Defendant also asserted counterclaims of infringement against Plaintiffs for six additional patents: U.S. Patent Nos. 8,059,177, 9,100,604, 8,599,244, 8,417,088, 7,457,529 and the '102 Patent. (D.I. 10 at 26-48). On May 18, 2018, Plaintiffs each answered the counterclaims (D.I. 16, 17), and on July 7, 2018, Plaintiffs filed the present motion for judgment on the pleadings (D.I. 18), alleging that the '102 Patent is invalid as claiming ineligible subject matter under 35 U.S.C. § 101.

The '102 Patent, which is titled "Information Recording/Play-Backing Apparatus," is directed to "[p]ortable information recording/play-back arrangements, wherein a controller judges whether a mode . . . is an imaging mode or a dubbing mode" and the controller controls the source

of power for imaging and play-back modules when in imaging mode, and the controller permits dubbing operations when in dubbing mode and the play-back modules operate on external power. ('102 Patent at Abstract). The '102 Patent contains five claims, each of which recites a "portable information recording/play-back apparatus" with additional limitations related to imaging and recording/play-back modules, media storage and battery monitoring. Claim 1 is the only independent claim of the '102 Patent and it recites:

> 1. A portable information recording/play-back apparatus comprising:
>
>> an imaging module which images video information;
>>
>> a first recording/play-back module which records the video information into a first recording medium, or plays-back the video information from the first recording medium;
>>
>> a second recording/play-back module which records the video information into a second recording medium, or plays-back the video information from the second recording medium;
>>
>> a battery; and
>>
>> a controller which controls at least the imaging module, the first and second recording/play-back module,
>>
>> wherein the controller judges whether a mode, controlling the first recording/play-back module and the second recording/play-back module, is an imaging mode, controlling so that the first recording/play-back module or the second recording/play-back module records a video information imaged by the imaging module into the first recording medium or the second recording medium, or a dubbing mode which controls a dubbing operation, the first recording/play-back module plays back a video information from the first recording medium and the second recording/play-back module recording the video information which is play-backed from the first recording medium into the second recording medium;
>>
>> when the controller judges that the mode is the imaging mode operating on the battery, the controller controls so that if recording into one recording medium is performed, recording into the other recording medium is stopped; and

> when the controller judges that the mode is the dubbing mode and the first and second recording/play-back modules operate on the battery, if the battery remaining amount is larger than a threshold value, the controller controls so that the dubbing operation is permitted.

('102 Patent at Claim 1). The remaining four claims ultimately depend from claim 1. Claims 2 and 3 add limitations related to video display on the recording/play-back apparatus and claims 4 and 5 add limitations related to the type of media storage on the apparatus (hard drive versus optical drive). (*See id.* at Claims 2-5).

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." In ruling on a Rule 12(c) motion, the Court must accept as true all well-pleaded allegations in the non-movant's pleadings and draw all reasonable inferences in favor of the non-movant. *See Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *3G Licensing, S.A. v. Blackberry Ltd.*, 302 F. Supp. 3d 640, 648 (D. Del. 2018). Judgment under Rule 12(c) is only appropriate where "the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).

### B. Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful

3

improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014). These "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 134 S. Ct. at 2354. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 134 S. Ct. at 2355. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

### 1. Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena or laws of nature. *Alice*, 134 S. Ct. at 2354; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

### 2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 134 S. Ct. at 2355; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T*

*Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

### III. DISCUSSION

Plaintiffs argue that claims 1-5 of the '102 Patent are directed to ineligible subject matter under § 101. As to step one of the *Alice* framework, Plaintiffs argue that the claims[1] are directed to the abstract idea of "conserving limited resources" or, alternatively, "conserving battery power." (D.I. 19 at 6-7; *see also id.* at 6 ("Conserving battery power is nothing more than an in-context statement of the abstract idea of conserving limited resources.")). According to Plaintiffs, conserving limited resources is "a fundamental human concern that is present in everything" (D.I. 19 at 6), and Plaintiffs compare the present claims to those previously found ineligible as claiming an abstract idea (*id.* at 7). For example, Plaintiffs liken the claims at issue to ones directed to "providing restricted access to resources" (*Prism Technologies*), "receiving, authenticating, and publishing data" (*EasyWeb Innovations*) and "classifying and storing images in an organized manner" (*TLI Communications*). (D.I. 19 at 7). Plaintiffs further argue that, even if the claims are

---

[1] Plaintiffs do not advocate that any one claim is representative, instead opting to address the five claims individually under both steps of *Alice*. Although the Court believes that claim 1 is representative, it will also address the four claims dependent on claim 1.

6

directed to "the more specific, in-context purpose of conserving battery power," that is still an abstract idea. (*Id.*). In that instance, in Plaintiffs' view, the claims are still to an abstract idea but in a specific technological area – *i.e.*, "the domain of battery-powered cameras." (*Id.*). Plaintiffs argue that the claims are not directed to an improvement in the functioning of technology because there is no articulation in the '102 Patent of how one is to achieve any technological improvement with the claimed invention. (*Id.* at 9-10).

Defendant argues that the '102 Patent is not directed to an abstract idea, but to an improvement in the functioning of camera technology – *i.e.*, "a video camera with two storage media and a controller that suppresses power to one of those media under certain conditions." (D.I. 25 at 10). Defendant focuses on the fact that the claims all require a dual-medium camera, wherein "power management functions" are additional limitations that render the camera "feasible and usable." (*Id.*). To achieve this, according to Defendant, the claims require the camera to have a controller that functions to modify power supply to the storage media when the camera is operating in a specific mode. (*Id.* at 11). Defendant argues that Plaintiffs are simply taking an intended "goal" of the claimed invention – *e.g.*, battery conservation – and articulating that as an abstract idea that is claimed, thereby rendering the claimed subject matter ineligible under § 101. (*Id.* at 10-11).

In the present case, the relevant inquiry at step one of *Alice* is whether the claims are directed to an improvement in computing devices or other technology, or whether they are simply to "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and

7

merely invokes generic processes and machinery."). The Federal Circuit has "repeatedly held that inventions which are directed to improvements in the functioning and operation of the computer are patent eligible." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018); *see also Core Wireless*, 880 F.3d at 1361-62 (collecting cases). Here, the Court agrees with Defendant that the '102 Patent claims are to an improvement in the functioning of a specific technology – not to an abstract idea that is merely implemented on generic computers or machinery.

As noted above, it is helpful to compare the claims at issue to claims previously found to be directed to an abstract idea in other cases. *See, e.g., Enfish*, 822 F.3d at 1334 (noting the lack of "definitive rule" for determining whether something is an abstract idea and explaining that both the Supreme Court and Federal Circuit "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases").[2] Plaintiffs rely heavily on *TLI Communications* to argue that the '102 Patent claims are directed to an abstract idea merely implemented on "conventional structures." (D.I. 19 at 14). In *TLI Communications*, the claims were directed to methods for "recording and administering digital images," with steps including recording, storing and classifying digital images with the use of "a telephone unit" and "server." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016). Although the claims recited elements from the physical world (*e.g.*, telephone unit), the focus of the claimed invention as a whole was the classifying and storing of digital images. *Id.* at 611. As the Federal Circuit noted:

---

[2] The Court appreciates that step one of *Alice* can be particularly difficult when abstract ideas are at issue. *See, e.g., Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) ("With these guideposts in mind, and cognizant of the difficulty inherent in delineating the contours of an abstract idea, we turn to the claims at issue here.").

> According to the [patent-in-suit], the problem facing the inventor was not how to combine a camera with a cellular telephone, how to transmit images via a cellular network, or even how to append classification information to that data. Nor was the problem related to the structure of the server that stores the organized digital images. Rather, the inventor sought to "provid[e] for recording, administration and archiving of digital images simply, fast and in such way that the information therefore may be easily tracked."

*Id.* at 612 (citation omitted). Thus, the claims were not directed to an improvement in the functioning of a telephone unit, server or any technology – rather, the claims merely implemented the method of classifying and storing images (an abstract idea) on that conventional hardware.

The Court does not find the claims at issue here to be similar to those found ineligible in *TLI Communications*. Claim 1 of the '102 Patent is directed to a specific type of technology – a recording/play-back apparatus – with features designed to improve upon the prior art. The relevant problems with prior devices and the claimed solution are disclosed in the patent. The specification describes one of the problems with prior art cameras:

> [I]n either case of the DVD camera and the HDD camera, it is difficult to edit by using only one medium. In relation to this, like the HDD & DVD combination recorder, a small-size HDD may be put into the DVD camera. However, basically ***in the camera driven by a battery, if both of the HDD and the DVD are driven, the battery consumption becomes great and this is not realistic.***

('102 Patent at 2:8-15 (emphasis added)). The specification also provides:

> [A]n object of the present invention [is] to provide a video or audio information recording/play-backing apparatus having both an HDD which can be driven by a battery even when a small HDD is mounted on a DVD camera and an optical drive . . . .
>
> ***The video or audio information recording/play-backing apparatus according to the present invention performs control to save power*** of the LCD for performing display and an HDD and an optical drive for performing recording which consume great power and stops power supply when there is no necessity.

9

(*Id.* at 2:16-28 (emphasis added)). According to the specification, the claimed invention "can provide an information recording/play-backing device requiring a smaller power consumption," and the "object" of battery conservation "may be achieved by the invention disclosed in the claims." (*Id.* at 2:21-22 & 2:29-31). Further, the specification discloses that the claimed invention uses a controller to monitor the device's mode of operation, and it also details how the disclosed controller monitors and differentially suppresses power consumption and operation. (*See, e.g., id.* at 3:44-47 & 4:5-5:48 & Figs. 3-5). Claim 1 requires a controller that "judges" the mode the claimed recording/play-back apparatus is operating in and "controls" the apparatus accordingly. (*Id.* at Claim 1). The same is true for its dependent claims. (*Id.* at Claims 2-5).

The Court finds the claims at issue here to be similar to others directed to technological improvements found eligible at *Alice* step one. *See, e.g., Core Wireless*, 880 F.3d at 1361-62 (finding claims directed to "improved user interface for electronic devices, particularly those with small screens" and not the abstract idea of displaying generic index on computer where claims required "particular manner of displaying a limited set of information to the user" and specification explained problems in prior devices); *Visual Memory*, 867 F.3d at 1259 (finding claims directed to "an improved computer memory system, not to the abstract idea of categorical data storage" where claims required operational characteristics be defined based on the type of processor connected to the memory system, and where specification discussed improvement in performance over prior memory systems); *Enfish*, 822 F.3d at 1339 (finding claims to data storage and retrieval system not abstract but instead directed to "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory" where claims were limited to "self-referential" table and not any form of storage, and where specification explained benefits of claimed self-referential table over prior database structures).

On its face, claim 1 of the '102 Patent is directed to a "recording/play-back apparatus" that uses a controller to monitor and control different modes of operation and power consumption of the apparatus. As discussed above, the patent describes battery-consumption problems with prior devices and how the claimed controller improves those devices. Contrary to Plaintiffs' suggestion, the focus of claim 1 is an improved camera, not a generic improvement in battery (or resource) conservation untethered from any technology.[3] The Court therefore finds that claim 1 of the '102 Patent is not directed to an ineligible abstract idea. *See Enfish*, 822 F.3d at 1336 (finding no abstract idea at step one of *Alice* because "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity").

Although the Court is mindful that "[a] claim is not representative simply because it is an independent claim," *Berkheimer*, 881 F.3d at 1365, it is not clear how the dependent claims of the '102 Patent could add limitations that change the non-abstract concept of claim 1 into an abstract one.[4] Nonetheless, the Court addresses the dependent claims and finds that none of them are directed to an abstract idea. Each of the dependent claims recite a "portable information recording/play-back apparatus" as with claim 1. Their dependency from claim 1 necessarily means that these claims are all also directed to an improved camera that uses a controller to modify power

---

[3] Plaintiffs' suggestion that the '102 Patent claims are akin to "simply automating human activity or performing conventional activities on conventional devices" (D.I. 19 at 10) is untenable and oversimplifies the claims to reach a level of generality needed to force the claims into the abstract ideas exception to § 101 patentability. *See Enfish*, 822 F.3d at 1337 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

[4] This situation is analogous to one where a dependent claim cannot be anticipated or rendered obvious by prior art that could not invalidate the claim from which it depends. *See, e.g., Hartness Int'l Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987) ("*A fortiori*, dependent claim 3 was nonobvious (and novel) because it contained all the limitations of claim 1 plus a further limitation.").

consumption of the different storage media depending on the mode of operation. The additional limitations relating to the display of video (claims 2 and 3) or relating to the type of media storage used (claims 4 and 5) do not change this conclusion. Thus, none of the '102 Patent claims are directed to an abstract idea.

Because the Court finds that the claims of the '102 Patent are not directed to an abstract idea, an analysis under step two of the *Alice* framework is unnecessary. *See Core Wireless*, 880 F.3d at 1363.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Plaintiffs' motion for judgment on the pleadings (D.I. 18). An appropriate order will follow.